# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

| | |
|---|---|
| **ERIC DUNLAP** | **PLAINTIFFS** |
| v. | **NO. 3:22-cv-412-BJB** |
| **LOUISVILLE METRO GOVERNMENT, ET AL.** | **DEFENDANTS** |

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER GRANTING MOTION TO DISMISS

Eric Dunlap alleges that on August 25, 2021, while he was a pretrial detainee in a Louisville Department of Corrections (LMDC) facility, another inmate (Defendant Terron Tooley) attacked him. Fourth Amended Complaint (DN 80) at 7. Dunlap sued not only Tooley, but also the Louisville Metro Government and several LMDC employees. Though these employees were not present during the assault, Dunlap accuses them of failing to protect him. And Louisville Metro, he contends, inadequately trained its employees and ignored known incidents of inmate-on-inmate violence.

Louisville Metro and several LMDC officials[1] have moved to dismiss the lawsuit for four reasons. Motion to Dismiss (DN 95). First, the statute of limitations bars Dunlap's claims. Second, the allegations—even if proved true—wouldn't establish their liability. Third, sovereign immunity bars Dunlap's state-law claims. Finally, Dunlap has failed to prosecute the case.

Dunlap's claims against the LMDC officials are indeed time-barred. And Dunlap's factual allegations—despite his filing of a Fourth Amended Complaint—fail to plead sufficient factual matter that connects the alleged municipal failings to Dunlap's injury. So Dunlap couldn't establish the necessary element of causation even if he proved the rest of his case. The Court thus grants the motion to dismiss Dunlap's claims against Louisville Metro and the LMDC Defendants—Martin Baker, Lexus Coleman, Levi Pinnick, Bobby Chaney, and Dianne Graham—and orders his lawyer to file a status report within 30 days regarding the status of his claims against the remaining Defendants.

---

[1] Several individually named Defendants—Martin Baker, Lexus Coleman, Levi Pinnick, Bobby Chaney, and Dianne Graham—filed the motion to dismiss (DN 95) at issue in this order. Dunlap hasn't served the other named Defendants—Dwayne Clark, Eric Troutman, Timothy Elmore, and Daniel Spaulding—who haven't moved to dismiss, and the claims against them are not addressed by this order.

1

## I. DUNLAP'S FACTUAL ALLEGATIONS

According to the Fourth Amended Complaint, which the Court accepts as true at this stage, *see, e.g., Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005), Dunlap was arrested on August 18, 2021, on an alleged sex offense and booked at an LMDC facility, Fourth Amended Complaint at 5. LMDC originally placed him in the general population unit. *Id.* at 6. On August 20, he requested a transfer to a single cell unit, claiming that he was more prone to violence from other inmates due to the sex-offense charges. *Id.* LMDC initially scheduled Dunlap for a transfer to that unit the next day, but the single-cell unit was completely full and his transfer was delayed. *Id.* By this time, Tooley had begun threatening Dunlap, who informed LMDC guards. *Id.*

Sometime between his request on August 20 and August 25, the prison "finally moved" Dunlap to a single-cell room on the "H5" unit. *Id.* at 7. But Tooley "was also moved to this unit—"despite his threats against" Dunlap. *Id.* Within that single-cell unit, the prison allows inmates to enjoy one hour at the "day room." *Id.* On August 25, Dunlap exited his cell to visit the day room; around that same time, Tooley's "door opened" and some unspecified malfunction allowed him "to prevent the door from closing" and exit his cell. *Id.* Dunlap never says *how* the door opened or *who* opened it, but that it nonetheless opened and Tooley ventured to the day room, where he "snuck up behind Dunlap" and repeatedly punched him. *Id.* Dunlap "laid by the elevators," yelling for help—but none of the prison staff answered until "eventually" Corrections Officer Spaulding came to his aid. *Id.* Dunlap "sustained significant and permanent injuries as a result of his assault." *Id.*

## II. THIS LITIGATION

This case's (rather tortured) procedural history bears on the number of timeliness issues raised by the Defendants in this motion. Acting on his own behalf and without the help of a lawyer, Dunlap filed his original Complaint (DN 1) on August 7, 2022, within a year of Tooley's attack. That initial Complaint named as Defendants the "Louisville Metro Detention Center" and several John Does. Still proceeding *pro se*, he filed an Amended Complaint (DN 20) on September 29, 2022, naming LMDC, the Louisville Metro Government, multiple John Does, and Sergeant Timothy Dearinger. The Court's initial review (undertaken for all *pro se* prisoner complaints under § 1915A) allowed the amendment "as a matter of right," and dismissed the claims against all defendants except for two: an "Unknown black inmate" and an "Unknown guard #2," in an official capacity, which the Court construed as claim against Louisville Metro. Memorandum and Order (DN 26) at 1, 7–8, 16–17; Service and Scheduling Order (DN 27) at 2. The U.S. Marshal served Louisville Metro on March 16, 2023. DNs 28, 31.[2]

---

[2] Judge Hale and Judge McKinley handled this case before the Chief Judge reassigned it in July 2024. DN 73.

2

Dunlap filed a Second Amended Complaint (DN 40) on July 20, 2023, adding claims against three "Unknown Nurses" and LMDC in addition to those against the "Unknown Black inmate" and "Unknown Guard 2," which had previously been construed to name Louisville Metro. Another § 1915A review, conducted with respect to the newly-named Defendants, dismissed the new counts because they failed to state a plausible claim that could succeed against the new Defendants. Memorandum Opinion and Order (DN 44) at 8. Dunlap's claims against "Unknown Guard #2" and "Unknown black inmate" remained pending.

Still proceeding *pro se*, Dunlap filed a Third Amended Complaint (DN 69) on June 10, 2024, to once again add defendants: Terron Tooley, Lexus Coleman, Timothy Elmore, Kathy L. Murphy, and Daniel Spaulding. A few months later, Dunlap retained counsel, *see* DN 71, whom Magistrate Judge Edwards allowed to file a Fourth Amended Complaint no later than October 18, 2024, *see* DN 79.

Dunlap's lawyer did so on October 4, 2024. Fourth Amended Complaint (DN 80). Dunlap named several Defendants from previous pleadings: Terron Tooley, Louisville Metro, Lexus Coleman, Daniel Spaulding, and Timothy Elmore. The Fourth Amended Complaint also included claims against new Defendants: former LMDC Director Dwayne Clark, former LMDC Chief of Staff Eric Troutman, former LMDC Deputy Director Martin Baker, LMDC Lieutenant Levi Pinnick, LMDC Sergeant Bobby Chaney, and "Class Interviewer" Dianne Graham. Dunlap asserts various civil-rights violations, accusing the LMDC Defendants and Louisville Metro of violating his constitutional right to be protected from inmate-on-inmate violence. He also brings state-law negligence claims against a number of the LMDC Defendants and Louisville Metro.

Louisville Metro and the LMDC Defendants who've been served filed the pending motion to dismiss under Rule 12(b)(6). Motion to Dismiss (DN 95).

Of Dunlap's five total claims in the Fourth Amended Complaint, this motion to dismiss addresses four.[3] In Count I, Dunlap sues the LMDC Defendants in their individual and official capacities under 42 U.S.C. § 1983, which grants a cause of action to any person who, under color of state law, "subjects" someone else to the violation of their constitutional or other federal rights. By failing to protect Dunlap from Tooley, the LMDC Defendants allegedly violated Dunlap's right to be free from prison violence. Fourth Amended Complaint at 12–14. In Count II, Dunlap sues Louisville Metro under the same statute, asserting that a custom or policy of ignoring the violation of constitutional-rights deprivations within LMDC facilities caused Dunlap's injury. *Id.* at 15–18 (*Monell* liability). Dunlap also brings state-law negligent-supervision claims against five current and former LMDC supervisors (of whom only Baker, Pinnick, and Chaney are before the Court). *Id.* at 19 (Count IV).

---

[3] Dunlap also sues Terron Tooley for assault and battery, but Tooley is not before the Court at this time. *See* Fourth Amended Complaint at 18 (Count III).

3

Finally, he brings negligence per se claims against "all Defendants." *Id.* at 20 (Count V).

The LMDC Defendants' motion urges dismissal of Dunlap's § 1983 and state-law claims as time-barred. Motion to Dismiss at 5–7. Louisville Metro raises a similar limitations defense against Dunlap's *Monell* claim and also argues that, in any case, Dunlap's Fourth Amended Complaint fails to state a claim. *Id.* at 7–9, 11–19. Louisville Metro and the LMDC Defendants raise sovereign-immunity defenses to Dunlap's state-law claims as well. *Id.* at 9–11. In the alternative, the LMDC Defendants ask the Court to dismiss the official-capacity suits against them as redundant given the suit against Louisville Metro. *Id.* at 19. Finally, LMDC Defendants and Louisville Metro seek dismissal for Dunlap's purported failure to prosecute his case. *Id.* at 19–21.

### III. DUNLAP'S CLAIMS AGAINST THE LMDC DEFENDANTS ARE TIME-BARRED.

#### A. Dunlap named the LMDC Defendants more than a year after his claim accrued.

Section 1983 itself contains no statute of limitations. So federal courts look to state law when considering statutes of limitations for such claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Kentucky, these actions are governed by the Commonwealth's one-year statute of limitations. *Codrington v. Dolak*, 142 F.4th 884, 890 (6th Cir. 2025) (citing KY. REV. STAT. § 413.140(1)(a)). That one-year limitation period starts "when the plaintiff knows of, or should have known of, that cause of action." *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1161–62 (6th Cir. 2021) (citation omitted). 12(b)(6) motions are proper vehicles for raising a statute-of-limitations defense if the complaint itself shows that the claim is time-barred. *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 671 (E.D. Mich. 2022) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

The statute of limitations therefore allowed Dunlap to sue on or before August 25, 2022. He filed his original complaint on August 7, 2022—within the one-year period. But that pleading named none of the LMDC Defendants; instead it asserted claims against several John Does and the Louisville Metro Detention Center. Complaint at 1. The LMDC Defendants showed up for the first time in either the Third Amended Complaint (DN 69) or Fourth Amended Complaint (DN 80), which Dunlap filed on June 5, 2024, and October 4, 2024, respectively.

Dunlap's § 1983 and state-law claims against the LMDC Defendants, therefore, were filed more than a year after the applicable statute of limitations had run.

In hopes of avoiding the consequences of this delay, Dunlap invokes Rule 15(c). That provision allows an amended complaint to relate back to the original date of the pleading if "the plaintiff made 'a mistake concerning the proper party's [*i.e.*, the defendant's] identity.'" *Wright v. Louisville Metro Gov't*, 144 F.4th 817, 824 (6th Cir. 2025) (quoting FED. R. CIV. P. 15(c)(1)(C)(ii)). Rule 15(c) "allows relation back for the

mistaken identification of defendants," however, "not for defendants to be named later through 'John Doe,' 'Unknown Defendants' or other missing appellations." *Zakora v. Chrisman*, 44 F.4th 452, 482 (6th Cir. 2022) (internal quotation omitted). That is of course what Dunlap's initial "John Doe" allegations sought to do. So relation back offers him no help in avoiding the LMDC Defendants' limitations defense.

### B. Equitable estoppel and equitable tolling do not save Dunlap's claims.

Dunlap argues in his opposition brief that either equitable estoppel or equitable tolling should toll the statute of limitations and overcome Defendants' timeliness defenses. MTD Response at 15–20.

The Fourth Amended Complaint, however, did not allege any facts that would support a tolling exception or otherwise mention estoppel. Although "a defendant ordinarily has the burden to establish its statute of limitations defense, when the court can ascertain from the complaint that the period for bringing the claim has expired, a plaintiff must affirmatively plead an exception to the limitations statute." *Reid v. Baker*, 499 F. App'x 520, 526 (6th Cir. 2012) (citing *Auslender v. Energy Mgmt. Corp.*, 832 F.2d 354, 356 (6th Cir. 1987)); *Snider v. City of Lyndon*, 2024 WL 3165322, at *6 (W.D. Ky. June 25, 2024) (dismissing § 1983 claim as time-barred "because no facts on the face of the Amended Complaint support equitable estoppel (or equitable tolling)"). Even considering the unpleaded arguments raised in Dunlap's opposition, however, they would fail to circumvent the limitations defense.

Kentucky law governs whether equitable tolling applies to this claim. *See Wallace*, 549 U.S. at 394. And Dunlap has not shown anything resembling the sort of "extraordinary circumstance" that might justify equitable tolling under that doctrine. "Equitable tolling pauses the running of, or tolls, the statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Williams v. Hawkins*, 594 S.W.3d 189, 193 (Ky. 2020) (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)). Incarceration is not a "legal disability" and therefore does not toll the statute of limitations. *Hamilton v. Meridian Mut. Ins. Co.*, 2003 WL 22064128, at *5 (Ky. Ct. App. Sept. 5, 2003). Nor does Dunlap allege that a "serious injury" prevented him from identifying the LMPD Defendants. *Cf. Murray v. Jones*, 2022 WL 821662, at *5 (E.D. Ky. Mar. 17, 2022) (extraordinary circumstances existed sufficient to toll statute of limitations for length of hospital stay after officer allegedly beat plaintiff so badly that doctors induced coma). So no basis for tolling is apparent, even in Dunlap's own description of his predicament.

As to the related doctrine of equitable estoppel, Dunlap likewise points to no wrongdoing on the Defendants' part which might stand in the way of the Defendants' timeliness defense. *See Williams*, 594 S.W.3d at 198 ("Applying equitable estoppel to avoid running of the statute of limitations is only warranted in extraordinary circumstances involving false representations or concealment."). Nothing in Dunlap's Fourth Amended Complaint, however, suggests that these LMDC Defendants

misrepresented or concealed their whereabouts to delay Dunlap's ability to sue. He hasn't pled a "lack of knowledge" of relevant facts, nor a "reliance, in good faith" on the LMDC Defendants' conduct or statements that delayed his claims against them. *Id.* at 196 (citing *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010). Any allegations to the contrary in Dunlap's reply are conclusory—and cannot salvage his allegations by establishing equitable estoppel.

Because Dunlap cannot rely on Rule 15(c), equitable tolling, or equitable estoppel to excuse his untimely amendment, the statute of limitations bars his claims against the LMDC Defendants.

### C. Dunlap fails to state a claim against the LMDC Defendants.

Even assuming Dunlap had named the LMDC Defendants before the statute of limitations ran, the claims against them would fail. Those counts rely on mere legal conclusions that fail to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Dunlap's Fourth Amended Complaint mentions Defendant Baker only three times—and even then only in conclusory statements, not specific factual allegations. *E.g.*, Fourth Amended Complaint at 11 (alleging that Defendant Baker and other supervisors "had actual knowledge that LMDC employees were not performing [required] direct in-person surveillance," yet "refused to hold LMDC employees accountable"). Nothing in any version of Dunlap's pleadings indicates *how* Baker allegedly knew this, what "accountab[ility]" he failed to supply that might've prevented Dunlap's beating, or what sort of inadequate surveillance he failed to correct. Dunlap relies on the same conclusory allegations to describe Coleman, Pinnick, Chaney, and Graham's conduct: these Defendants "unlawfully failed to protect" Dunlap, and that failure "was the direct and proximate cause of" his injuries. *Id.* at 12; *see also id.* at 19 (The "Defendants breached their duty of care."). Apart from pleading Pinnick's and Chaney's citizenship, Dunlap doesn't mention any specific action by either officer that led to his injury. *Id.* at 5, 19. This is not enough to state a factually plausible claim for officer liability.

### IV. DUNLAP'S CLAIMS AGAINST LOUISVILLE METRO ARE NOT TIME-BARRED, BUT NEVERTHELESS FAIL TO STATE A PLAUSIBLE CLAIM.

### A. The City was timely sued.

Before the one-year statute of limitations had run, Dunlap sued "Unknown Guard #2" in his or her individual and official capacities. (Original) Complaint at 3. Because the law treats official-capacity suits as suits against the government, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), this amounts to a timely claim against Louisville Metro.

Louisville Metro nevertheless raises two limitations defenses.

6

Louisville Metro contends that Dunlap provided notice too late. Motion to Dismiss at 8–9. True, Metro received *notice* after the limitations period—but that's not fatal to Dunlap's official-capacity claim. Because Dunlap filed his first complaint *pro se*, requesting *in forma pauperis* status, he couldn't serve the City until *after* this Court's say so. *See* 28 U.S.C. §§ 1915A, 1915(e). And before this Court assessed his complaint under 28 U.S.C. § 1915(a), Dunlap diligently pursued his claim—filing numerous motions for, among other things, appointed counsel, DNs 6, 19. Assessing his complaint (and a pending motion to amend it), this Court allowed his official-capacity claim against the unnamed guard to proceed. Motion and Order (DN 26) at 7 ("Plaintiff's claim for failure to protect in violation of the Fourteenth Amendment to proceed against Defendant 'Unknown Guard #2' in his individual and official capacities."). From there, this Court directed the Marshalls to serve Louisville Metro Government as a Defendant, DN 27. *See Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996) ("[W]hen a plaintiff is proceeding *in forma pauperis* the court is obligated to issue plaintiff's process to a United States Marshal[,] who must in turn effectuate service upon the defendants, thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint"). So Dunlap lodged his official-capacity claim within the limitations period, and any delay in notice traces back to the statutorily mandated *in forma pauperis* review.

Louisville Metro also suggests that Dunlap's *Monell* claims cannot relate back to the original complaint under Rule 15(c). The original complaint, it maintains, did not plead conduct which might give rise to a *Monell* claim. Reply (DN 105) at 6–8. Dunlap's *pro se* complaint, however, sued Defendant "Unknown Guard #2" in an *official* capacity based on Tooley's attack at LMDC. *See* Complaint (DN 1). He alleged, among other things, that a "policy" or "custom" influenced that guard's behavior. *Id.* at 8. True, the Fourth Amended Complaint (at 16–18) adds more allegations to that effect. But Dunlap needn't rely on relation back since the City was already treated as a timely-sued Defendant in the original complaint. And the description of the City's policies, as discussed next, still fail to state a *Monell* claim.

### B. Dunlap fails to state a plausible *Monell* claim.

Though timely, Dunlap's claim against Louisville Metro still fails because it doesn't state a factually plausible claim under § 1983. That statute allows plaintiffs to hold municipalities liable for the unconstitutional acts of its agents only if the municipality caused the violation—usually, because a "policy or custom" led to a violation of the plaintiff's rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipalities are not liable under a theory of *respondeat superior* or vicarious liability, in other words, just because their officers or agents violated the Constitution while on the job. *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (citing *Monell*, 436 U.S. at 692–94).

Four "avenues" of *Monell* liability are available for plaintiffs to show that they were deprived of their rights: "(1) the municipality's legislative enactments or official

agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694). Each theory requires showing an underlying constitutional violation. *Id.*

Dunlap attempts to establish liability under the second, third, and fourth *Monell* theories. Fourth Amended Complaint at 15–18.

### A. Ratification

Dunlap argues that Louisville Metro ratified a pattern of unconstitutional activity on the part of LMDC officers. *Id.* at 15–17. Under this theory, the plaintiff must show that an official with final decision-making authority made "a deliberate choice to follow a course of action," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), and that this choice was the "moving force" behind the plaintiff's injury, *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) (citing *Pembaur*, 475 U.S. at 484–85).

Dunlap's reliance on allegations of post-injury conduct fails to plausibly allege ratification. He alleges that "[o]n September 23, 2021, the Louisville Corrections Union held a vote to tender its resolution of no-confidence as to Defendant [Clark]. This vote passed 216–6." Fourth Amended Complaint at 16. Dunlap seems to imply that Mayor Fischer, as "the final policy maker for LMDC," "could have removed Defendant Clark from his position." *Id.* But failing to act on a "vote of no-confidence," taken by a union group and admittedly with "no legal effect," says little about any deliberate choice to ratify unconstitutional actions taken by the officer in question. Much less does it connect the failure to fire Clark to any policy or custom that caused Dunlap's injury. Dunlap's suggestion that Mayor Fischer ignored Clark's unspecified "failures" does not offer any plausible factual allegation "that an official charged with making final policy" ratified or "approved" any decision or policy that led to Tooley's violence. *Feliciano*, 988 F.2d at 656.

Nor has Dunlap alleged that the Mayor (or any other instantiation of Louisville Metro) "fail[ed] to meaningfully investigate and punish allegations of unconstitutional conduct." *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 882 (6th Cir. 2020). Dunlap's reliance on the union vote and failure to remove Clark—which occurred after the beating—do not plausibly connect a City investigatory decision that caused guards to fail to intervene and prevent inmate-on-inmate violence. Dunlap's suggestion that Louisville Metro ratified some course of conduct fares no better. He relies on the City's alleged failure to make "meaningful progress" to adopt the recommendations of a "year-long independent review of LMDC," which ended in February 2023 and proposed a "new jail" and "audit unit." Fourth Amended Complaint at 16, 17. But Dunlap hasn't alleged how this investigation, which finished about seventeen months after his assault, proves that the City made a deliberate choice that caused his injury.

8

### B. Failure to Train

Dunlap also asserts that LMDC failed to properly train its officers and that this failure led to his injury. Fourth Amended Complaint at 17. Plaintiffs advancing this theory must show "1) the City's training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the City's deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)).

#### 1. Inadequate Training

Failure-to-train allegations must focus on the "adequacy of the training program in relation to the tasks the particular officers must perform." *Jackson*, 925 F.3d at 834 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). This element is not met merely by "prov[ing] that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *City of Canton*, 489 U.S. at 391.

Dunlap alleges that LMDC "jail personnel" did not receive the required amount of training, that the training they did receive was not offered "in person," and that those inadequately trained guards failed to perform the in-person checks as required by Department Policy. Fourth Amended Complaint at 8–9. The Fourth Amended Complaint, however, pleads no specific facts demonstrating how this lack of training was inadequate for the purposes of preventing inmate-on-inmate violence.

Dunlap alleges that LMDC did not "offer in-person training from October 2019 to at least March 2022." *Id.* 501 KAR 3:160, according to Dunlap, requires that all "jail personnel" attend or "receive a minimum of twenty-four (24) hours of annual in-service training." *Id.* But whether the Defendants failed to receive state-required "in-person" (or "in-service") training does not, by itself, establish *inadequate* training—and Dunlap fails to explain how the timing or location of that training matters at all. Nor does the complaint make clear whether an "in-person" program would have even included training about inmate-on-inmate violence or the door malfunction that allegedly allowed Tooley to attack Dunlap. The conclusory assertion that "LMDC's training program, ratified by Defendant [Metro], was inadequate in training its correction officers and staff," plainly cannot state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Even if it did, however, the Fourth Amended Complaint still fails the deliberate-indifference and causation elements required to state a failure-to-train claim—as discussed below.

#### 2. Deliberate Indifference

The deliberate-indifference element of a failure-to-train theory imposes a high bar on plaintiffs, requiring them to show "that a municipal actor disregarded a known or obvious consequence of his actions." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). A "failure to train is not measured by information

9

retention or whether 'better or more training' would have avoided the incident," but instead "by inquiring if the City 'completely disregarded' its duty to train its officers" on known recurring situations. *Harris v. City of Saginaw*, 62 F.4th 1028, 1038 (6th Cir. 2023). The complaint must indicate that the training program's deficiencies presented a "plainly obvious" risk of leading to rights-deprivations of the sort the plaintiff complains. *Gregory*, 444 F.3d at 752 (quoting *Brown*, 520 U.S. at 412). Plaintiffs may meet this requirement by alleging either (1) "prior instances of unconstitutional conduct demonstrating that the [municipality] had notice that the training was deficient and likely to cause injury but ignored it," or (2) "evidence of a single violation of federal rights, accompanied by a showing that the [municipality] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Jackson*, 925 F.3d at 836 (quoting *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)).

Dunlap's Fourth Amended Complaint does not point to prior instances of inmate-on-inmate violence that resulted from inadequate training. True, it cites a September 2021 news article pointing to violence, overdoses, and leadership challenges at LMDC. Fourth Amended Complaint at 10 n. 5. But this article does not discuss instances that preceded Dunlap's August 2021 injury. It provides no details about the causes of fights that bear any apparent relationship to Dunlap's situation. Nor does it indicate that the LMDC's training policies were insufficient or that the City remained deliberately indifferent to these issues. *Id*. Even assuming many of the reported incidents occurred before Dunlap's, the Fourth Amended Complaint does not show how these injuries resulted from a *policy* and *decision* (as opposed to tragic operational failures) so inadequate as to present a "plainly obvious" risk of rights deprivations. *Gregory*, 444 F.3d at 752 (quoting *Brown*, 520 U.S. at 412).

Nor does the Fourth Amended Complaint plead any factual matter showing that Louisville Metro knew of these inadequacies or that their failure to correct the training program was the result of deliberate indifference to risks at the detention facility. That the City could have implemented *better* training does not itself prove indifference. *Harris*, 62 F.4th at 1038. That the City could have made its officers attend the additional training, Fourth Amended Complaint at 8, or "buil[t] a new jail," *id*. at 16, do not imply any complete disregard to train officers to prevent and respond to inmate-on-inmate assaults.

### 3. Relatedness and causation

Finally, a failure-to-train claim requires plaintiffs to show how the inadequate training program was "closely related to or actually caused the [plaintiff's] injury." *Jackson*, 925 F.3d at 834 (quoting *Ciminillo*, 434 F.3d at 469). Dunlap, however, says nothing about how Tooley exited his room to punch Dunlap: "while [Dunlap] was out for his one hour of day room time, [Tooley's] door opened, and he was able to prevent the door from closing," and "then [he] snuck up behind [Dunlap] and assaulted him by striking him on his head multiple times with closed fists." Fourth Amended

10

Complaint at 7. Dunlap implies that Tooley's door should have remained closed, *id.* at 9, but he does not allege how Tooley's ability to escape his cell was the actual or proximate result of an inadequate training program. Nor does his complaint suggest how better door maintenance or better training might have prevented Tooley from assaulting Dunlap.

### C. Custom of Tolerance

Dunlap also asserts that Louisville Metro acceded to a custom of federal rights violations within LMDC facilities. Fourth Amended Complaint at 17–18. To prevail under this *Monell* avenue, plaintiffs must show that the municipality in question has "(1) an unwritten custom (2) of remaining deliberately indifferent (3) to a clear and persistent pattern of [federal rights violations] (4) that it knew or should have known about." *Spainhoward v. White County, Tennessee*, 421 F. Supp. 3d 524, 543 (M.D. Tenn. 2019) (quotation omitted); *see also Thomas*, 398 F.3d at 433.

Dunlap's claims fail for the same reasons as his failure-to-train theory. The Fourth Amended Complaint pleads no specific factual matter showing Louisville Metro had notice of a pattern of federal rights violations. He hasn't shown prior instances of rights violations that the municipality ignored or "inadequately investigat[ed]," *see Burgess*, 735 F.3d at 478. Nor has he sufficiently pled that the municipality's acquiescence caused his injury. *See Thomas*, 398 F.3d at 429 (citing *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)). Instead, he relies on spare allegations of a "failure to investigate," Fourth Amended Complaint at 18, a "disregard of the known or obvious consequences of its inactions," *id.*, and a "failure to investigate or discipline, or to make meaningful policy reforms," *id.* at 17. And though he alleges that "ample evidence" supports these claims—he says nothing about what that evidence shows or makes plausible. His general allegations haven't shown a "pattern" that the City should have been aware of, nor do his general allegations of "inaction" demonstrate deliberate indifference to inmate-on-inmate violence of the kind Dunlap endured.

### IV. SOVEREIGN IMMUNITY BARS DUNLAP'S REMAINING CLAIMS AGAINST METRO.

Dunlap's two state-law claims cannot succeed as a matter of law. First, he sues the LMDC Defendants, in an individual capacity, for "negligent supervision" and "negligence per se." But these claims fail for the same reasons discussed above: he named these defendants *after* the one-year statute of limitations expired, and neither Rule 15(c) relation back, equitable estoppel, nor equitable tolling arguments relieve him of that time bar.

Louisville Metro (and the LMDC Defendants in their official capacity) have expressly asserted sovereign immunity from state-law claims, moreover. And Dunlap hasn't identified any reason that immunity wouldn't apply here. So the Court dismisses the negligent-supervision claims against Louisville Metro. *See Jewish*

11

*Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson County Metro Gov't*, 270 S.W.3d 904, 907 (Ky. Ct. App. 2008).

Dunlap hopes to continue the state-law claims against the individual defendants in their individual capacities. MTD Response at 20. But because the statute of limitations bars these claims for the same reason it bars his § 1983 claims, dismissal is appropriate. And having dismissed the claims against Louisville Metro and LMDC Defendants, Defendant's failure-to-prosecute argument is moot. Motion to Dismiss at 19–21.

## ORDER

Because Dunlap's claims against the LMDC Defendants are time-barred, and because he fails to state a claim against Louisville Metro under § 1983, the Court grants Defendants' motion to dismiss (DN 95) with prejudice. The Court orders Dunlap to file a status report within 30 days regarding the remaining claims, including proof of service of Defendants Clark, Troutman, Elmore, and Spaulding, and Tooley.